UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**ɔ49**

- - - - - - - - - - - - - - - - - - - - x
          :
IN THE MATTER OF AN APPLICATION OF  :
THE UNITED STATES OF AMERICA FOR    :
AUTHORIZATION TO OBTAIN LOCATION DATA :
CONCERNING A MOBILE TELEPHONE     :
ASSIGNED NUMBER (347) 465-0606     :
          :
- - - - - - - - - - - - - - - - - - - - x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

SEALED ORDER **SEP 20 2011** ★

**BROOKLYN OFFICE**

EASTERN DISTRICT OF NEW YORK, SS:

Application having been made by the United States for

an Order pursuant to Federal Rule of Criminal Procedure 41 and 18

U.S.C. § 2703(c)(1)(A), authorizing agents of the United States

Postal Inspection Service to ascertain the physical location of

the mobile telephone assigned call number (347) 465-0606, a

telephone issued by Metro PCS with International Mobile

Subscriber Identity Number 311660000189301 subscribed to in the

name GRAYSON HEWITT, 1204 AVENUE U, BROOKLYN, NY 11229-4107 (the

"SUBJECT TELEPHONE"), including but not limited to E-911 Phase II

data (or other precise location information) concerning the

SUBJECT TELEPHONE (the "REQUESTED INFORMATION"),[2] for a period of

30 days;

The Court finds that there is probable cause to believe

that the REQUESTED INFORMATION will constitute or lead to

---

[2] Such information shall, where other information is
unavailable, include records reflecting the tower and antenna
face ("cell site") used by the SUBJECT TELEPHONE at the start and
end of any call or text message transmission.

evidence of violations of Title 18, United States Code, Sections 1341 and 1343, as well as to the identification of individuals who are engaged in the commission of these offenses.  The Court also finds that there is reasonable cause to believe that providing immediate notification of the execution of the warrant may seriously jeopardize an ongoing investigation.  Furthermore, the execution of this warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510).  To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

IT IS HEREBY ORDERED pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) that law enforcement officers, beginning at any time within ten days of the date of this Order and for a period not to exceed 30 days, may obtain the REQUESTED INFORMATION concerning the SUBJECT TELEPHONE, with said authority to extend to any time of the day or night as required, including when the SUBJECT TELEPHONE leaves the Eastern District of New York; all of said authority being expressly limited to ascertaining the physical location of the SUBJECT TELEPHONE and expressly excluding the contents of any communications conducted by the user(s) of the SUBJECT TELEPHONE.

2

It is further ORDERED that Metro PCS (the "service provider") assist law enforcement by providing all information, facilities and technical assistance needed to ascertain the REQUESTED INFORMATION, including by initiating a signal to determine the location of the SUBJECT TELEPHONE on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as the service provider accords the user(s) of the SUBJECT TELEPHONE.

It is further ORDERED that the United States Postal Inspection Service compensate the service provider for reasonable expenses incurred in complying with any such request.

It is further ORDERED that the Court's Order and the accompanying Affidavit submitted in support thereof be sealed until further Order of the Court, except that copies of the Court's Order in full or redacted form may be maintained by the United States Attorney's Office, and may be served on law enforcement officers, and other government and contract personnel acting under the supervision of such law enforcement officers, and the service provider as necessary to effectuate the Court's Order.

It is further ORDERED that this warrant be returned to the issuing judicial officer within 14 days after the termination of the monitoring period authorized by the warrant.

It is further ORDERED that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), service of notice may be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extension thereof.

It is further ORDERED that the service provider, its affiliates, officers, employees, and agents not disclose the Court's Order or the underlying investigation, until notice is given as provided above.

It is further ORDERED that this Order apply to any changed mobile telephone number subsequently assigned to the SUBJECT TELEPHONE within the period of this Order.


Dated:      Brooklyn, New York
            9/19        , 2011

                                    _____
                                    UNITED STATES MAGISTRATE JUDGE
                                    EASTERN DISTRICT OF NEW YORK


4

Longitude-Latitude (Rev. 4/10)
DSS:DAS
F. #2009R02161

 MISC.   11-649

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x
                                        :
IN THE MATTER OF AN APPLICATION OF      :
THE UNITED STATES OF AMERICA FOR        :    AFFIDAVIT IN SUPPORT
AUTHORIZATION TO OBTAIN LOCATION DATA   :    OF APPLICATION
CONCERNING A MOBILE TELEPHONE           :
ASSIGNED NUMBER (347) 465-0606          :
                                        :
- - - - - - - - - - - - - - - - - - - - x

EASTERN DISTRICT OF NEW YORK, SS:

MICHELLE PURNAVEL, being duly sworn, deposes and says

that she is a Postal Inspector with the United States Postal

Inspection Service, duly appointed according to law and acting as

such.

1.    I am a "federal law enforcement officer" within

the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C),

that is, a government agent engaged in enforcing the criminal

laws and duly authorized by the Attorney General to request a

search warrant.  I have been an Inspector with the Postal

Inspection Service for approximately eight years.  I have

participated in investigations of mail and wire fraud and, among

other things, have conducted or participated in surveillances,

the execution of search warrants, debriefings of informants and

reviews of taped conversations.

2.    I submit this affidavit in support of an

application for an order pursuant to Federal Rule of Criminal

Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing federal agents to ascertain the physical location of the mobile telephone assigned number (347) 465-0606, a telephone issued by Metro PCS with International Mobile Subscriber Identity Number 311660000189301 subscribed to in the name GRAYSON HEWITT, 1204 AVENUE U, BROOKLYN, NY 11229-4107 (the "SUBJECT TELEPHONE"), including but not limited to E-911 Phase II data (or other precise location information) concerning the SUBJECT TELEPHONE (the "REQUESTED INFORMATION"),[1] for a period of 30 days.

3.    I have personally participated in the investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other law enforcement officers; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, such statements are

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the SUBJECT TELEPHONE at the start and end of any call or text message transmission.  In requesting cell site information, the government does not concede that such cell site records — routinely retained by wireless carriers as business records — may only be obtained via a warrant issued on probable cause.  See In re Application, 632 F. Supp. 2d 202 (E.D.N.Y. 2008) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.); In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (same).

provided in substance and in part unless otherwise indicated.
Since this affidavit is being submitted for the limited purpose
of securing an order authorizing the acquisition of the REQUESTED
INFORMATION, I have not included details of every aspect of the
investigation.

4.   Probable cause exists to believe that the
REQUESTED INFORMATION will constitute or lead to evidence of
offenses involving mail fraud and wire fraud in violation of 18
U.S.C. §§ 1341 and 1343 (the "SUBJECT OFFENSES"), as well as the
identification of individuals who are engaged in the commission
of these offenses.

5.   For the reasons set out in this affidavit, there
is probable cause to believe that the SUBJECT OFFENSES have been
committed, are being committed, and will continue to be committed
by FNU LNU, also known as "Mark Anderson."  Further, there is
probable cause to believe that FNU LNU, also known as "Mark
Anderson" regularly carries the SUBJECT TELEPHONE and uses it to
commit the SUBJECT OFFENSES.

## PROBABLE CAUSE

6.   From approximately March 2009 until at least
January 2010, Rockford Group LLC ("Rockford") representatives
solicited investments through telephone calls and mailings to
potential investors.  Representatives of Rockford Group made
numerous false statements to investors to induce them to invest.

3

Among other misrepresentations, representatives of Rockford Group falsely told investors that their funds would be used to purchase plaintiffs' rights to future recoveries in personal injury and other lawsuits, and that such investments would earn a fixed rate of return of 15%.

7.    Based on these and other false representations, Rockford solicited over $11 million from at least 200 investors in the United States and Canada. No evidence suggests that Rockford used investor funds as it promised its investors it would. Instead, Rockford wired nearly all of the investor funds to bank accounts overseas.

8.    None of the investors have received any payments from Rockford Group since November 2009. Although a few investors successfully withdrew all of their funds prior to November 2009, the overwhelming majority of investors lost all of their principal investment, and have had no contact with anyone purporting to be from Rockford Group since November 2009.

9.    On December 8, 2009, the Securities and Exchange Commission obtained an order ("the SEC Order") from the Southern District of New York, in which the Court froze all assets that Rockford held in the United States, based on allegations that Rockford had engaged in the fraud described above. Shortly after the SEC Order was entered, Rockford Group abandoned its office space and shut down its phone service.

4

10.   Law enforcement authorities have spoken with an investor ("Investor #1") who invested funds in Rockford in 2009, after Investor #1 received numerous telephone calls from a person Investor #1 knew as "James Weston," a representative of Rockford.

11.   In or about September 2010, Investor #1 received two unsolicited telephone calls from a person whose voice Investor #1 recognized as the same "James Weston" with whom Investor #1 had dealt in connection with Investor #1's investments with Rockford.  This time, however, the caller identified himself as "Andrew Black from UBS" and attempted to solicit Investor #1 to invest in an initial public offering ("IPO") of General Motors stock.  During these calls, Investor #1 feigned interest, and thereafter contacted law enforcement authorities.

12.   Law enforcement authorities have spoken with a second investor, "Investor #2."   In or about October 2010, Investor #2 also received a series of unsolicited telephone calls from a person identifying himself as "Andrew Black from UBS."  As with Investor #1, the person purporting to be "Andrew Black" solicited Investor #2 to invest in an IPO of General Motors stock.  Based on the representations made by "Andrew Black," Investor #2 sent "Andrew Black" money to invest.

13.   In or about October, 2010, I contacted UBS, who informed me that no person named "Andrew Black" had ever worked

5

for UBS.  Further investigation revealed that the address where
"Andrew Black" had instructed Investor #2 to send funds was a
commercial mailbox which had been opened by an individual using a
false identity.

14.   In or about November 2010, law enforcement
authorities intercepted the proceeds of a $30,000 check from
Investor #2 to "Andrew Black."  However, law enforcement
authorities have been unable to identify, locate or apprehend the
person purporting to be "Andrew Black."[2]

15.   In or about March 2011, Investor #2 received a
voice mail message from a person whose voice Investor #2
recognized as the same "Andrew Black" with whom Investor #2 had
dealt in connection with Investor #2's investments with "UBS

---

[2]On May 27, 2010, Judge Marilyn D. Go signed an order,
Misc 10-352, authorizing the release of historical cell-cite
information for mobile telephone number (347) 398-4933 ("the 4933
Phone"), which was a telephone used by "James Weston" while
soliciting Rockford investors.  On that same date, Judge Go also
signed an order, Misc 10-354, authorizing the use of a pen
register and trap and trace device on the 4933 Phone, and another
order, Misc 10-353, authorizing acquisition of location data for
the 4933 Phone.  However, the 4933 Phone was not used during the
monitoring period authorized by orders Misc 10-353 and Misc 10-
354, and therefore no location data or pen register information
was obtained.  On October 29, 2010, Judge Go signed another
order, Misc 10-754, authorizing acquisition of location data for
mobile telephone number (201) 668-6944, which was a telephone
used by "Andrew Black" while soliciting Investor #2 to invest in
UBS.  The government obtained location data from this telephone
for approximately 30 days, however the government was unable to
successfully identify the user of this telephone.  On September
9, 2011, Judge Lois Bloom signed an order, Misc 11-633,
authorizing the use of a pen register and trap and trace device
on the SUBJECT TELEPHONE.

Clearing Corp."   This time, however, the caller identified
himself as "Mark Anderson from Grayson Hewitt," stated that he
had a new investment opportunity for Investor #2, and asked
Investor #2 to call him on the SUBJECT TELEPHONE.

16.   Thereafter, I contacted Investor #3 and Investor
#4, among other investors.   Investor #3 and Investor #4 each
informed me that they had received telephone calls from a person
identifying himself as "Mark Anderson from Grayson Hewitt."
Investor #3 began receiving these calls in January 2011 and
Investor #4 began receiving these calls in May 2011.   Investor #3
and Investor #4 each further informed me that "Mark Anderson"
stated that Grayson Hewitt purchases plaintiffs' rights to future
recoveries in personal injury and other lawsuits and promised a
fixed rate of return of 15% -- the same false claims made by
representatives of the Rockford Group.   Moreover, the person
purporting to be "Mark Anderson" sent Investor #3 and Investor #4
sales brochures which claimed that Grayson Hewitt was located in
New York, founded in 2006, and has provided over $100 million to
more than 2000 investors.   As a result of these representations,
Investor #3 and Investor #4 each invested money with Grayson
Hewitt.

17.   Records from the New York Department of State
reflect that "Grayson Hewitt Funding LLC" was founded in 2010.
Bank records from JP Morgan Chase ("the Chase Account") reflect

7

that an account was opened in the name of "Grayson Hewitt Funding LLC" on May 24, 2010. The Chase Account records do not reflect that Grayson Hewitt has invested funds as it promised its investors it would. Instead, a large portion of funds in the Chase Account has been used to purchase gold, coins, meals, clothing and other items.

18. Investor #3 and Investor #4 have each informed me that, after they invested with Grayson Hewitt, the person purporting to be "Mark Anderson" has continued to call them to discuss their investments with Grayson Hewitt.

19. I have obtained the telephone records for the SUBJECT TELEPHONE for January 31, 2011 through August 3, 2011 and September 9, 2011 through September 19, 2011. These records show the following: the SUBJECT TELEPHONE called Investor #2 on March 18 2011; the SUBJECT TELEPHONE placed multiple phone calls to Investor #3 beginning in January 31, 2011 and continuing as recently as September 15, 2011; and the SUBJECT TELEPHONE placed multiple phone calls to Investor #4 beginning in May 13, 2011 and continuing as recently as September 9, 2011.

20. Based on the foregoing, there is probable cause to believe that the REQUESTED INFORMATION will lead to evidence regarding the activities described above. The REQUESTED INFORMATION is necessary to assist law enforcement agents in conducting surveillance; determine the locations of any money

8

transfer businesses used by FNU LNU, also known as "Mark Anderson" and his coconspirators to launder proceeds of the fraud or through which money is exchanged with coconspirators; and to determine the true identity and location of FNU LNU, also known as "Mark Anderson" and his coconspirators.

21. There is "reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result." 18 U.S.C. § 3103a(b)(1). Moreover, the investigation is expected to continue for at least 30 days after the termination of the monitoring period. Therefore, providing notice to the subscriber or user of the SUBJECT TELEPHONE prior to 30 days after the termination of the monitoring period would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

22. The execution of this warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510). To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

23. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), it is requested that

the Court issue a warrant and Order authorizing agents to obtain

the REQUESTED INFORMATION for a period of 30 days.


24.   IT IS FURTHER REQUESTED that the Court direct

Metro PCS (the "service provider") to assist law enforcement by

providing all information, facilities and technical assistance

needed to ascertain the REQUESTED INFORMATION, and further direct

the service provider to initiate a signal to determine the

location of the SUBJECT TELEPHONE on the service provider's

network or with such other reference points as may be reasonably

available and at such intervals and times as directed by the law

enforcement officer serving the proposed order, and to furnish

the technical assistance necessary to accomplish the acquisition

unobtrusively and with a minimum of interference with such

services as that provider accords the user(s) of the SUBJECT

TELEPHONE, for a period of 30 days.   Reasonable expenses incurred

pursuant to this activity will be processed for payment by the

United States Postal Inspection Service.

25.   IT IS FURTHER REQUESTED that the Court authorize

execution of the warrant at any time of day or night, owing to

the potential need to locate the SUBJECT TELEPHONE outside of

daytime hours.

26.   IT IS FURTHER REQUESTED that the warrant, Order

and this affidavit be sealed until further order of the Court in

10

order to avoid premature disclosure of the investigation, guard

against flight, and better ensure the safety of agents and

others, except that working copies may be served on law

enforcement officers of the Postal Inspection Service, United

States Secret Service, Immigration & Customs Enforcement,

federally deputized state and local law enforcement officers, and

other government and contract personnel acting under the

supervision of such investigative or law enforcement officers,

and the service provider as necessary to effectuate the Court's

Order.

       27.   IT IS FURTHER REQUESTED that, pursuant to 18

U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure

41(f)(3), the Court authorizes notice to be delayed for a period

of 30 days after the termination of the monitoring period

authorized by the warrant or any extensions thereof.

Michelle Purhavel
Postal Inspector


Sworn to before me this
  19th day of September 2011

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

11

MISC. 11-649

Longitude-Latitude Warrant (Rev. 4/10)

| 𝕴𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 | DISTRICT |
|---|---|
| | Eastern District of New York |

| UNITED STATES OF AMERICA<br>v. | DOCKET NO. | MAGISTRATE'S CASE NO. |
|---|---|---|
| PREMISES KNOWN AND DESCRIBED AS A MOBILE TELEPHONE NUMBER (347) 465-0606 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 311660000189301 | To:  ANY AUTHORIZED FEDERAL AGENT | |

Affidavit having been made before me by the below-named affiant to obtain precise location information concerning the following cell phones (the "Premises"):

A MOBILE TELEPHONE NUMBER (347) 465-0606 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 311660000189301

and as I am satisfied that there is probable cause for the acquisition of precise location information concerning the Premises,

YOU ARE HEREBY COMMANDED to acquire precise location data concerning the Premises named above for a period of 30 days starting within ten calendar days of the date of this order, during any time of day; to return this warrant to the U.S. Magistrate Judge designated in this warrant within 10 days after the monitoring period authorized by the warrant has ended; and pursuant to 18 U.S.C. § 3103a(b) (authorizing delayed notification), to serve notice within 30 days after the monitoring period authorized by the warrant has ended.

| NAME OF AFFIANT | SIGNATURE OF JUDGE OR U.S. MAGISTRATE | DATE/TIME ISSUED |
|---|---|---|
| Postal Inspector Michelle Purnavel | | 9/19/11 at 11:48 a.m. |